**LAWRENCE C. HERSH**
Attorney at Law
17 Sylvan Street, Suite 105
Rutherford, NJ  07070
(201) 507-6300

**BRUCE W. WAGNER**
Attorney at Law
1440 N. Harbor Blvd., Suite 900
Fullerton, CA 92887
(714) 449-3338

Attorneys for Plaintiff HORNG TECHNICAL ENTERPRISE CO., LTD.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

―――――――――――――――――――――X
                                              :
HORNG TECHNICAL ENTERPRISE    :
CO., LTD.                                     :   Hon. Stanley R. Chesler, U.S.D.J
                                              :   Hon. Michael A. Shipp, U.S.M.J.
            Plaintiff,                        :   Civil Action No. 06-816 (SRC) (MAS)
                                              :
vs.                                           :   **DECLARATION OF BRUCE W.**
                                              :   **WAGNER IN SUPPORT OF**
SAKAR INTERNATIONAL, INC. and                 :   **MOTION TO ENFORCE**
Does 1 through 100, inclusive,                :   **SETTLEMENT  AGREEMENT AND**
                                              :   **FOR SANCTIONS**
            Defendants.                       :
                                              :
―――――――――――――――――――――X

   Bruce W. Wagner, pursuant to 28 U.S.C. § 1746, declares as follows:

   1.  I am an attorney licensed to practice law in the State of California and have been admitted pro hac vice to represent Plaintiff Horng Technical Enterprise Co., Ltd. in the present matter.  I submit this Declaration in support of plaintiff's motion to enforce settlement and for sanctions.

1

2. On June 4, 2010, this case was settled for $250,000.00. During discussions between counsel and the Court as to implementation of the settlement, it was suggested by Bruce W. Wagner and Lawrence Hersh, attorneys of record for Horng, that the settlement be implemented by way of a stipulated judgment.

3. Ezra Sutton, attorney of record for Sakar, stated in response that he wanted settlement documents consisting of a settlement agreement and a mutual release to be signed by the liquidator on behalf of Horng and an officer of Sakar instead of a stipulated judgment.

4. Attorney Sutton then suggested that the liquidator be given thirty (30) days to sign the settlement documents consisting of a settlement agreement and a mutual release.

5. Attorney Wagner stated Horng's liquidator had yet to reach agreement with him as to how the settlement funds would be distributed based on the settlement being for $250,000.00, a minimal amount when compared to the claim. Attorney Wagner reminded the Court that he was on a contingency fee (notice of lien previously filed) and that a third party had a claim for reimbursement on the settlement fund for monies used to finance the case over the years.

6. The Court stated that it would maintain jurisdiction to enforce the settlement if counsel for Horng was unable to obtain the signature of the liquidator to the settlement documents within thirty (30) days. The Court also stated that any future Court order enforcing the settlement would release the parties from any liability in the case.

7. The terms of settlement were as follows:

A. The court appointed liquidator in Taiwan must sign the Settlement Agreement and Release before any settlement funds are paid to the court appointed liquidator and to Bruce Wagner, Horng's attorney.

      B.  Once the court appointed liquidator in Taiwan signs the Settlement Agreement (and Release), Sakar shall pay $250,000 to the Trust Account of attorney Bruce Wagner for disbursement to Mr. Wagner and to the liquidator.

      C.  This Court, Judge Chesler, shall retain jurisdiction to enforce the Settlement and Mutual Releases.

      D.  The case is hereby dismissed with prejudice.

      E.  The liquidator must sign the Settlement Agreement and Mutual Release documents within thirty (30) days of June 4, 2010.

    8.  The above terms are reflected in the handwritten settlement agreement prepared by attorney Sutton and signed by counsel for the parties and the Court.  A true and correct copy of the handwritten settlement is attached hereto as Exhibit A.

    9.  The terms of the settlement agreement and release were then read into the record and approved by the Court.  The jury was released.  The case was dismissed with prejudice.

    10.  Upon my return to California, I prepared the Settlement Agreement and the Mutual Release and then sent them to attorney Sutton on June 9, 2010 by way of E-mail and U.S. Mail.  Mr. Sutton was asked to review the settlement documents and to advise of any changes he wanted.  A true and correct copy of the E-mail and the Settlement Agreement and the Mutual Release are attached hereto collectively as Exhibit B.

    11.  On June 16, 2010, I received an E-mail from attorney Sutton stating he had reviewed the proposed Settlement Agreement and the Mutual Release and suggested changes consisting of the addition of the following language to the Settlement Agreement and the Mutual Release:

        (1)   the liquidator and Sakar's representative are to provide notarized signatures to the settlement documents and that the liquidator also provide his seal/chop to the settlement documents;

        (2)   there must be a restatement of paragraphs from the liquidator's prior declaration to the Court authorizing attorneys Wagner and Hersh to maintain the case;

        (3)   there must be language that the liquidator has authority to settle the case for the settlement amount;

        (4)  there must be language that the liquidator is authorized by the Taiwan court to sign the Settlement Agreement and the Mutual Release;

        (5)   there must be language of warranty from the liquidator there were no other claims by anyone, including Horng creditors, that can be asserted against Sakar; and

        (6)   attorney Sutton insisted that the liquidator sign the Settlement Agreement and the Mutual Release in front of Sakar's Taiwan attorney.  (See Wagner Decl. ¶ 11 and Exh. C).  A true and correct copy of the E-mail is attached hereto as Exhibit C.

    12.  Over the next few days, there were subsequent discussions between counsel to see whether a compromise could be reached on the language insisted upon by attorney Sutton.

    13.  I requested by letter dated June 23, 2010, to the Court that the court issue an order enforcing the settlement by ordering Sakar to immediately pay the settlement sum of $250,000 into attorney Wagner's client trust account and releasing all parties from any claims related to the litigation.

    14.  On June 28, 2010, a conference call was held between the Court and counsel for the parties.  The Court stated that the liquidator must sign the settlement documents and that any further proceedings before the Court would be by way of motion.

15. On June 28, 2010, I had a phone discussion with attorney Sutton concerning the text of the settlement documents. I told attorney Sutton that the settlement documents would be changed per his request.

16. On June 29, 2010, I sent an E-mail to attorney Sutton with the revised Settlement Agreement and the revised Mutual Release which provided new text insisted upon by attorney Sutton that the settlement documents would be signed by the liquidator with his seal/chop, that the Chang-Wen Feng is the person who signed the previously filed declaration of liquidator authorizing maintenance of this lawsuit, and that the liquidator warrants that any claim held by a creditor of Horng cannot be asserted against Sakar and that any claim a creditor of Horng against Sakar was release. A true and correct copy of the E-mail is attached hereto as Exhibit D.

17. Thereafter, and on June 29, 2010, I talked to attorney Sutton by phone and was told by attorney Sutton that he would be meeting with his clients that afternoon to go over the revised Settlement Agreement and the revised Mutual Release. Attorney Sutton stated that his clients may still want Sakar's attorney in Taiwan to witness the liquidator's signature to the settlement documents. Attorney Sutton stated that his client may still insist on language in the settlement documents that no part of the settlement funds go to Susan Chen, Harry Hung's wife.

18. On June 30, 2010, I received an E-mail from attorney Sutton stating he reviewed the revised draft of the Settlement Agreement and the Mutual Release and stated that Sakar is insisting on new language in the settlement documents that no part of the settlement funds go to Susan Chen for monies she paid to finance the case in that it was his client's belief that these funds were funds embezzled from Horng and that Sakar's legal representative from the Russin Vecchi law firm in Taiwan be present when the liquidator signs the Settlement Agreement and the Mutual Release. Attorney Sutton's June 30, 2010, E-mail to attorney Wagner concluded with

5

the statement that if there is no agreement to the two (2) changes then he has been authorized by Sakar to file a motion with the Court to request these additions to the settlement documents while reminding attorney Wagner that paragraph 2 of the handwritten Settlement Agreement states that the settlement funds are to be for disbursement to Mr. and Wagner and to the liquidator.  A true and correct copy of the E-mail is attached hereto as Exhibit E.

19.  The liquidator received attorney Sutton's E-mail to attorney Wagner dated June 30, 2010, from an unknown source.  The liquidator subsequently communicated with attorney Wagner's office and stated that it was okay for his signature to the settlement documents to be witnessed by Sakar's legal representative in Taiwan.  The liquidator also stated that he, not Sakar's attorney, will make the decision according to Taiwan Corporate Law as to reimbursing Susan Chen, aka Susan Hung. for her payment of Horng's litigation costs and fees over the past five (5) years from the 50% of the settlement funds sent to the liquidator from attorney Wagner's client trust account.

20.  The settlement documents were revised to reflect that the signature of the liquidator to the settlement documents is to be witnessed by Sakar's legal representative from the Russin Vecchi law firm in Taiwan (reflected in paragraph 16 of the Settlement Agreement and paragraph 11 of the Mutual Release) and that the settlement funds deposited into attorney Wagner's trust account shall only be disbursed to attorney Wagner and to the liquidator (reflected in paragraph 3(a) of the Settlement Agreement and paragraph 3 of the Mutual Release).

21.  I then sent a letter to attorney Sutton by E-mail and Federal Express on July 8, 2010, with the revised Settlement Agreement and the revised Mutual Release containing the above-described revisions.  I requested attorney Sutton to have Sakar sign the settlement documents and advise him when Sakar's legal representative can be present at the liquidator's office the

following week to witness the liquidator's signature to the settlement documents.  A true and correct copy of the letter is attached hereto as Exhibit F.

22.  On July 9, 2010, attorney Sutton sent attorney Wagner an E-mail stating that Sakar does not have to comply with the terms of the settlement because the liquidator did not sign the settlement documents within thirty (30) days of June 4, 2010.  (See Wagner Decl. ¶ 22 and Exh. G).

23.  During discussions between counsel and the Court on June 4, 2010, as to implementation of the settlement, attorney Sutton stated that it was very difficult to get Sakar offer anything in settlement because Sakar believed the case was dead in early January 2010 when the Court suspended the case once it was determined that Horng was in liquidation and that the liquidator had not given counsel for Horng consent to maintain this action.

24.  Attorney Sutton in his letter to the Court dated June 24, 2010, stated his client's outrage if any portion of the settlement funds were used to repay a third party lien for financing of this case if payment was to anyone related to Harry Hung.  My letter to the Court filed on December 9, 2009, states that I had recently received a notice of lien from Susan Hung indicating she has a lien on the proceeds of this case for funds she provided that were used to fees and costs for local counsel, Taiwan counsel, my travel expenses, payments to crews to inspect and test products, etc.   Underlying Sakar's claim that the settlement agreement is unenforceable is Sakar not wanting to pay anything in settlement if it means there is a chance that Susan Hung will receive payment from the liquidator of any portions of the funds she used to finance this case.  That decision is up to the liquidator based on Taiwan Corporate Law.

////////

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 20, 2010.

<u>/s/ Bruce W. Wagner</u><br>
BRUCE W. WAGNER